**Dated: January 31, 2017**

**The following is ORDERED:**



*Tom R. Cornish*
TOM R. CORNISH
UNITED STATES BANKRUPTCY JUDGE

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF OKLAHOMA

In re:

DONALD RAY MOSES  
NYRA LOUISE MOSES,  
          Debtors.

Case No. 16-80918-TRC

Chapter 13

## ORDER GRANTING MOTION TO SET VALUE OF SECURED CLAIM

Before the Court is Debtors' Motion to Determine Allowed Secured Claim of 21st Century Mortgage Corporation (Document 13) and Creditor 21st Century Mortgage Corporation's Response and Objection (Document 21). The Court held an evidentiary hearing on the Motion on January 12, 2017.

This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 1334 and 157. This Order constitutes the Court's findings of fact and conclusions of law consistent with Fed. R. Bankr. P. 7052 and 9014.

After reviewing the evidence and applicable statutory and case law, the Court concludes that the value of 21st Century Mortgage Corporation's secured claim on Debtors' 2013 Cavco Mobile Home is $ 72,600.

I.   **Findings of Fact.**

Debtors Donald and Nyra Moses filed this Chapter 13 case on August 29, 2016. They live in a 2013 Cavco Manufactured Home on a lot they own in Taft, Muskogee County, Oklahoma. On Schedule A/B, they list the value of the mobile home as $ 38,860, and they value the lot at $ 9,000. They claim both as exempt property on Schedule C. Creditor 21st Century Mortgage Corporation ("21st Century") holds a secured claim on the mobile home. Debtors list the amount of the claim at $ 92,503.21, with secured portion being $ 39,860 and the unsecured portion valued at $ 52,643.21. Creditor 21st Century filed a proof of claim for $ 94,643.93, identifying the collateral as a manufactured home. Attached to the proof of claim is a Consumer Loan Note and Security Agreement for a 2013 Cavco Motor Home executed by Donald R. Moses in July of 2013. The Oklahoma Lien Entry Form is also attached, and identifies a 2013 Cavco Motor Home.

At the evidentiary hearing, Donald Moses testified regarding the purchase of the 2013 manufactured home and its current condition. He stated that he purchased the manufactured home in July of 2013 and has lived there with his wife and three children for three and one half years. His assessment is that the home is not in good condition. He believes that the home has more than average wear and tear. The floors are not in good condition and squeak when walked upon. He identified problems with faucets and showerheads. One bathroom has a water leak behind a shower wall, causing mold to grow behind the wall. He also identified damage to a screen door. Based upon his experience of living in the home, he would expect to pay $ 55,000 for the home in its current condition. He presented no evidence regarding repair costs.

Creditor 21st Mortgage offered a formal appraisal valuing the home at $ 72,600. The appraisal was performed for 21st Mortgage by Charlotte Brady. Brady is a certified by National Appraisal Services to appraise manufactured homes, having earned her certification in 2010. She

stated that she is the only certified manufactured home appraiser in the State of Oklahoma. She also has extensive experience in the manufactured home industry, having worked in retail sales and as a manager of a manufactured home community. She estimates that she performs 40 to 50 appraisals each year.

Brady viewed the subject home on October 29, 2016. She walked through the home with Mrs. Moses who shared her concerns about certain areas of the home. Brady also took measurements and photos of the home. Brady assessed the home's condition as very good. Her appraisal is based upon values from the N.A.D.A. Manufactured Housing Appraisal Guide. Brady explained that N.A.D.A. assumes a value based upon a home in average condition, and assumes certain information based upon the make, model, size and year of the home, as well as construction costs. She combines these values with her physical inspection of the home to arrive at her appraisal of current value.

Brady stated that the subject home is a 32 x 76 foot manufactured home, consisting of four bedrooms and two baths and is 2,432 square feet. The starting point of her appraisal was to assign a base value of $ 60,800 using the NADA guide, which she described as being a shell value without any components or accessories that finish the home. Her written appraisal reflects that this value is based upon her assessment of the property as being in good condition. To this base value she subtracted values for missing components and needed repairs totaling $ 4,517. Repairs for the following items were estimated to be $ 967: small hole in the siding, carpeting, linoleum floor, doors, faucets, bathroom wall panel, tub trim, and stove burner, and plumbing repairs ($ 200) for leaks in the dishwasher, master bathroom, and replacing the master bath toilet tank kit. Additions to the value were for other components such as the square footage, upgrades in windows, porcelain fixtures, custom accessories of drapes and a fireplace, central heat and air, a long list of

miscellaneous items, skirting and wooden steps, all totaling $ 16,323. The miscellaneous items included upgraded insulation, drawers, exterior door and walls, dormers, eaves, shutters, ceiling exhaust and paddle fans, vaulted ceilings, washer, dryer, freezer, sinks, and valves. After deductions for repairs and additions for components, Brady arrived at a current market value of $ 72,600. Finally, she added estimated costs for delivery and set-up of the home of $ 8,825, and arrived at a replacement value of $ 81,425.

Moses did not dispute any of the specific information contained in the appraisal except the overall condition of the home.

## II. Conclusions of Law

Both parties proceeded regarding valuation pursuant to 11 U.S.C. § 506. No issue regarding use of the property was raised and it appears clear to the Court that the 2013 Cavco manufactured home is personal property acquired for personal and family use. Pursuant to § 506(a)(2), the value of personal property securing an allowed claim is determined based on the replacement value of the property as of the date the petition is filed without deducting for costs of sale and marketing. Section 506(a)(2 further provides that for property obtained for personal, family or household purposes, replacement value is "the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined."

Brady's use of the N.A.D.A. Manufactured Housing Appraisal Guide ("NADA Guide")for determining value pursuant to § 506(a)(2) is appropriate. *See In re Kollmorgen,* 2012 WL 19520, (Bankr. D. Kans. Jan. 12, 2012). As Brady explained and the General Instructions of her written appraisal state:

> *The N.A.D.A. Manufactured Housing Appraisal Guide is the modified summation approach to value. Values reflected in the publication are based on market data*

> *received from a variety of sources in the nine N.A.D.A. regions, and these values represent a sited (delivered and set-up) structure in current year depreciated replacement retail dollars. In the absence of local, reliable, similar comparable sales data, the values are considered to be **FAIR MARKET RETAIL VALUES.***

Based upon Brady's experience and visual inspection, she used values for items considered in good condition. The NADA Guide has four "conditions": excellent, good, fair and poor. "Excellent" condition is defined as: "[h]ome is new, or like new, very attractive and highly desirable." "Good" condition is defined as: "[n]ormal wear and tear is visible, but home is well maintained, still attractive, desirable and useful." "Fair" condition is defined as: [m]inor deterioration apparent due to both the climate and the deferred maintenance, less attractive but obviously useful." "Poor" condition is defined as: "[s]igns of structural deterioration, obvious missing or broken component items, definitely undesirable and marginally useful."

Moses' assessment was that the home was not in the best condition. He acknowledged that it should exhibit normal wear and tear. He did not give notice of any structural deterioration. Although it is possible that the home could be classified as falling into the "fair" condition category, Moses provided only minimal information regarding the problems he observed and did not dispute the specific information contained in Brady's appraisal. Her assessment that the home should be valued as "good" rather than "fair" was not challenged with any specific information nor an alternate valuation by Moses. Brady's appraisal does take into account for repairs of the items that Moses also identified. He did not provide any evidence to rebut or challenge the values or costs of repairs. Brady valued the added components based upon an age of three to four years old, such as upgraded faucets, dual glazed windows, upgraded appliances, furnace and air conditioner, washer and dryer, custom drapes, fireplace, and smoke detectors. The values used account for normal wear and tear and depreciation based upon age. The Court finds that her appraisal values are well-documented and supported, and adopts her replacement value by cost

approach of $ 72,600.  The Court declines to include the adjustments of $ 8,825 for delivery and set-up of the home.  Brady offered no information as to how she arrived at this amount.  Further, the Court finds no case law which supports the view that retail value includes these costs.  *See Kollmorgen*, nt. 25.

### III.   Conclusion.

IT IS THEREFORE ORDERED THAT Debtors' Motion to Set Value of Secured Claim (Docket Entry 13) is **granted in part.**  The Court finds that the value of 21st Century Mortgage Corporation's secured claim regarding the 2013 Cavco Manufactured Home is $ 72,600.

###